UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

KIRK M.,

                 Plaintiff,

     v.

NANCY A. BERRYHILL, Deputy Commissioner of Social Security for Operations,

                 Defendant.

Case No. C18-5546 MJP

**ORDER AFFIRMING THE COMMISSIONER'S FINAL DECISION AND DISMISSING THE CASE WITH PREJUDICE**

Plaintiff seeks review of the denial of his application for Disability Insurance Benefits. Plaintiff contends the ALJ erred in evaluating the medical evidence, lay witness statements, his own testimony, and the vocational evidence. Dkt. 15. As discussed below, the Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** the case with prejudice.

## **BACKGROUND**

Plaintiff is currently 53 years old, has a high school education, and has worked as a mail clerk, plastic cutter, dispatcher, warehouse supervisor, laborer, cleaner, and automobile body repairer. Administrative Record (AR) 864-65. In March 2011, Plaintiff applied for benefits, alleging disability as of December 10, 2008. AR 74. Plaintiff's application was denied initially, on reconsideration, and by an ALJ after a December 2012 hearing. AR 73, 81, 14-23. Plaintiff

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 1

appealed to this court, which reversed the decision and remanded for further proceedings. AR 768. After an ALJ conducted hearings in May 2016 and May 2017, the ALJ issued a decision finding Plaintiff not disabled. AR 600, 685, 842-70.

## THE ALJ'S DECISION

Plaintiff's date last insured was December 31, 2010. AR 846. Utilizing the five-step disability evaluation process set forth in 20 C.F.R. § 404.1520, the ALJ found that, from the December 2008 alleged onset date to the December 2010 date last insured:

**Step one:** Plaintiff did not engage in substantial gainful activity.

**Step two:** Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, and insulin dependent diabetes mellitus with peripheral neuropathy.

**Step three:** These impairments did not meet or equal the requirements of a listed impairment as defined by 20 C.F.R. Part 404, Subpart P. Appendix 1.

**Residual Functional Capacity:** Plaintiff could perform light work, lifting and carrying 20 pounds occasionally and 10 pounds frequently and standing and/or walking for up to 6 hours in an 8-hour workday. He could not climb ladders, ropes, or scaffolds; could occasionally climb ramps and stairs or stoop, kneel, crouch, and crawl; could frequently balance. He could tolerate only occasional exposure to excess vibration, hazards, and atmospherics as defined in the Dictionary of Occupational Titles (DOT). He could frequently handle, finger, and feel bilaterally.

**Step four:** Plaintiff could perform past relevant work as a plastic cutter, dispatcher, or mail clerk, and thus was not disabled.

**Step five:** In the alternative, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform and thus he was not disabled.

AR 846-70. In May 2018, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. AR 561-64.

According to Plaintiff, based on a later application for Supplemental Security Income not at issue here, the ALJ determined that Plaintiff became disabled on June 4, 2015. Dkt. 15 at 2, n. 1.

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 2

**DISCUSSION**

This Court may set aside the Commissioner's denial of Social Security benefits only if the ALJ's decision is based on legal error or not supported by substantial evidence in the record as a whole. *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017). Each of an ALJ's findings must be supported by substantial evidence. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one interpretation, the Commissioner's interpretation must be upheld if rational. *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005).

A.   **Functional Limits Due To Pain**

Plaintiff contends the ALJ erred by failing to address the "limiting effects of pain" on his RFC. Dkt. 15 at 8. Plaintiff does not state clearly what functional limitations his pain causes. He simply asserts that his testimony that, "if he is feeling well enough, he will watch TV and, if not, lay in bed due to back pain" is inconsistent with the ability to "work 8 hours a day, 5 days per week, on a regular schedule … while being able to lift up to 20 pounds and stand on [his] feet for six hours out of an eight hour day…." Dkt. 15 at 10. An ALJ need only include in the RFC limitations that are supported by substantial evidence. *Robbins v. Soc. Sec. Admin.*, 466

F.3d 880, 886 (9th Cir. 2006). Plaintiff has not demonstrated that the ALJ failed to include any properly-supported limitations.

Moreover, the ALJ discounted Plaintiff's testimony on several grounds, most of which Plaintiff does not challenge. "Factors that an ALJ may consider in weighing a claimant's credibility include … inconsistencies in testimony or between testimony and conduct, daily activities, and 'unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment.'" *Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007) (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). The ALJ discounted Plaintiff's testimony because he was noncompliant with treatment recommendations. AR 858. The ALJ also cited inconsistent statements. For example, Plaintiff testified that he could not sit for longer than 30 minutes at a time, but reported in May 2010 that he spent the "majority of the day" sitting. AR 858 (citing AR 164). Plaintiff testified in 2012 that he had not used marijuana between high school and nine months before the hearing, but elsewhere reported that he used marijuana daily since he was a teenager. AR 859 (citing AR 34, 1743, 613). Plaintiff does not challenge these reasons for discounting his testimony, and the Court concludes they are clear and convincing reasons. *See Trevizo*, 871 F.3d at 678 (absent affirmative evidence of malingering, the ALJ can only discount the claimant's testimony as to symptom severity by providing "specific, clear, and convincing" reasons that are supported by substantial evidence). Plaintiff challenges one reason: that the medical evidence did not support his allegations. Dkt. 15 at 8-9. However, even if that reason were erroneous, the error would be harmless because the ALJ provided multiple other clear and convincing reasons. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1163 (9th Cir. 2008) (providing improper reasons to discount claimant's testimony is harmless error as long as the remaining reasons are valid).

The Court concludes the ALJ did not err by failing to include Plaintiff's alleged limitations based on pain in the RFC.

**B. Medical Opinions**

A treating physician's opinion is generally entitled to greater weight than an examining physician's opinion, and an examining physician's opinion is entitled to greater weight than a nonexamining physician's opinion. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). An ALJ may only reject the controverted opinion of a treating or examining doctor by stating "specific and legitimate" reasons. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). The ALJ can meet this standard by providing "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citation omitted).

**1. Physical Limitations**

Plaintiff contends the ALJ erred by accepting the opinions of Renato Fajardo, M.D., and by rejecting the opinions of B. Daniel Chilczuk, M.D., and in turn the opinions of Robert Hoskins, M.D., that relied on Dr. Chilczuk's report. Dkt. 15 at 4.

**a. Dr. Chilczuk**

Spine surgeon Dr. Chilczuk examined Plaintiff in February 2011 and "recommend[ed]" that he "avoid any physical type of work on a permanent basis, which would include repetitive bending, lifting, twisting, etc. He is best qualified for a sedentary type of position." AR 349. The ALJ noted that Dr. Chilczuk's examination occurred approximately two months after Plaintiff's date last insured but did not, as Plaintiff assumes, rely on that fact as a reason to discount Dr. Chilczuk's opinions. *See* AR 861. The ALJ gave Dr. Chilczuk's opinions "very little weight" because his clinical findings were "largely benign" and he did not provide a

"function by function" assessment. AR 861. Incongruity between a treating physician's opinions and her own medical records is a "specific and legitimate reason for rejecting" the opinions. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Dr. Chilczuk performed an extensive examination, but almost every finding was normal, including neurological, sensory, and vascular findings, hip range of motion, and reflexes. AR 348-49. The only exceptions were a "mild" increase in lumbar muscle tone and "mildly" restricted lumbosacral range of motion. AR 348. The ALJ rationally inferred that these findings did not support such severe functional limitations. *See Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004) ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). Plaintiff argues that the ALJ was "playing doctor" by interpreting Dr. Chilczuk's findings. Dkt. 15 at 5. But the ALJ was entitled to compare Dr. Chilczuk's clinical findings, and what they revealed about Plaintiff's functional capacity during the relevant time period, to Dr. Chilczuk's conclusions. Identifying a "discrepancy" between a doctor's findings and opinions is "a permissible determination within the ALJ's province." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). The extreme mismatch between mild findings and severe limitations was a specific and legitimate reason to discount Dr. Chilczuk's opinions.

The ALJ also noted that Dr. Chilczuk's opinion that Plaintiff was best qualified for sedentary work was less helpful than an assessment of individual functions such as sitting, standing, etc. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) (upholding RFC that ALJ based on "concrete restrictions" in one opinion, rather than another less-specific opinion); *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (upholding ALJ's decision preferring opinion with "specific findings that were useful in the disability determination" over a "meager" and "conclusory" opinion). Plaintiff argues that the ALJ should have assumed that Dr.

Chilczuk meant sedentary work as defined in Social Security regulations, which limit lifting to 10 pounds maximum and light articles occasionally and limit walking/standing to occasionally. Dkt. 15 at 5; 20 C.F.R. § 404.1567. But Dr. Chilczuk's opinion does not refer to Social Security definitions and nothing in the record suggests he is familiar with Social Security regulations. The ALJ did not err by failing to assume that Dr. Chilczuk was referring to the Social Security definition of sedentary.

The Court concludes the ALJ did not err by discounting Dr. Chilczuk's opinions.

### b.    Dr. Hoskins

Plaintiff contends the ALJ erred by rejecting the opinion of nonexamining state agency physician Dr. Hoskins limiting Plaintiff to two hours of standing and/or walking. Dkt. 15 at 4 (citing AR 86-87). The ALJ gave "very little weight" to this limitation because it was inconsistent with the medical evidence. AR 860. Contradiction with the medical record can be a specific and legitimate reason to discount a medical opinion. *See Batson*, 359 F.3d at 1195 (that opinions were "contradicted by other statements and assessments of [claimant's] medical conditions" and "conflict[ed] with the results of a consultative medical evaluation" were specific and legitimate reasons to discount the opinions). Specifically, the ALJ found that Plaintiff "only periodically complained of peripheral neuropathy pain, … his diabetic foot exams were consistently normal throughout the period at issue[, and he] consistently demonstrated normal gait and had negative straight leg raise and normal strength on clinical exams." AR 860. Plaintiff does not dispute these findings, but argues that Dr. Hoskins "was exercising his medical judgment…." Dkt. 15 at 4-5. That is true, but exercising medical judgment is what doctors normally do, and yet the ALJ is not required to accept every medical opinion. When opinions conflict, the ALJ literally *cannot* accept every one. Plaintiff seems to be implying that, again, the

ALJ overstepped his role. But it is the ALJ's role to evaluate the medical evidence and resolve conflicts in medical opinions. *Andrews*, 53 F.3d at 1039. The ALJ did not err in fulfilling his role by discounting Dr. Hoskins' opined standing/walking limitation based on conflict with the medical record.

### c. Dr. Fajardo

Internal medicine practitioner Dr. Fajardo examined Plaintiff in June 2009 and opined that he could perform light work, defined as lifting 20 pounds maximum and 10 pounds frequently, and walking or standing six hours or primarily sitting with occasional pushing and pulling with arms or legs. AR 497-99. The ALJ gave Dr. Fajardo's opinions "great weight" because they were "fully consistent with the doctor's clinical findings and with the record as a whole…." AR 859-60.

Plaintiff argues that Dr. Fajardo had fewer records to review than Dr. Hoskins, and was not a specialist like Dr. Chilczuk. Dkt. 15 at 5. While those are certainly factors for the ALJ to consider, the ALJ weighed them along with other factors, and determined that Dr. Fajardo's opinions were entitled to great weight. Plaintiff is essentially asking for a reweighing of the evidence. But it is not the Court's role to reweigh the evidence or substitute its judgment for that of the Commissioner. *Thomas*, 278 F.3d at 954. The Court concludes that the ALJ did not err by according weight to Dr. Fajardo's opinions.

### 2. Mental Limitations

Plaintiff relies exclusively on the opinions of Terilee Wingate, Ph.D., to argue that the ALJ erred by failing to include any mental limitations in his RFC. Dkt. 15 at 6. Dr. Wingate examined Plaintiff in July 2009 and opined that he had moderate, or significant, limitations in the abilities to exercise judgment, to interact appropriately with coworkers, supervisors, and the

public, and to tolerate pressures and maintain appropriate behavior in a normal work setting. AR 510. In concluding that Plaintiff did not have a severe mental impairment, the ALJ gave Dr. Wingate's opinions "very little weight" because they were based on Plaintiff's discounted and contradicted self-reports, and were inconsistent with the medical evidence. AR 849.

"If a treating provider's opinions are based 'to a large extent' on an applicant's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible, the ALJ may discount the treating provider's opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (quoting *Tommasetti*, 533 F.3d at 1041). "However, when an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion." *Id.* Because psychiatric evaluations "will always depend in part on the patient's self-report, as well as on the clinician's observations of the patient[,] the rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness." *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017). Clinical interviews and mental status evaluations "are objective measures and cannot be discounted as a 'self-report.'" *Id.* While psychiatric evaluations always depend in part on the patient's self-report, Dr. Wingate's evaluation was based almost entirely on Plaintiff's self-report. As far as her actual observations in the mental status examination, every finding was mostly or entirely normal, except for dysphoric mood. AR 514. And the opined limitations were expressly based on Plaintiff's self-report. For example, Dr. Wingate opined that Plaintiff's ability to relate to coworkers and supervisors was impaired because "[h]e noted that he feels that coworkers will stab him in the back to get ahead." AR 510. The ALJ permissibly discounted Plaintiff's self-reports, as discussed above. In addition, Plaintiff concealed his daily marijuana use from Dr. Wingate, which may have affected her evaluation of his mental status. AR 849, 513. Substantial

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 9

evidence supports the ALJ's finding that Dr. Wingate's opinions were heavily based on Plaintiff's discredited self-reports, and this was a specific and legitimate reason to discount her opinions.

Inconsistency with the medical record was another specific and legitimate reason to discount Dr. Wingate's opinions. *See Batson*, 359 F.3d at 1195. Plaintiff's treating physician, Sean S. Stout, M.D., regularly recorded normal psychiatric findings with "no appearance of anxiety, depression, or agitation" throughout the relevant period of time. AR 361 (Jan. 2011), 378 (Oct. 2010), 400 (Jun. 2010), 408 (Apr. 2010), 413 (Nov. 2009), 420 (Oct. 2009), 424 (Jul. 2009), 428 (Apr. 2009), 423 (Jan. 2009), 436 (Oct. 2008).

The Court concludes the ALJ did not err by discounting Dr. Wingate's opinions, and consequently declining to include any mental limitations in Plaintiff's RFC.

## C. Lay Witness Statements

Plaintiff's mother, father, and two friends provided statements dated November or December 2012—nearly two years after the relevant time period. Plaintiff's mother reported that Plaintiff "is no longer able to sit or stand for periods of time" and due to foot numbness tends to lose his balance. AR 250. It takes him "longer than it used to" to do anything. AR 250. Plaintiff's father reported that "[a]bout 2-3 years ago" Plaintiff's abilities became more limited. AR 253. Sitting too long causes "trouble walking and dizz[iness]" and Plaintiff must use a cane about a quarter of the time. AR 253. Plaintiff's friend Kevin Collins reported that Plaintiff's mobility has gone downhill over the years. AR 256. Plaintiff's friend Tom Hansen reported that he had observed Plaintiff in pain since 1996, Plaintiff had complained of pain since at least 2008, and "since then [it] has only gotten worse." AR 262.

An ALJ may discount lay witness testimony by giving a germane reason. *Diedrich v.*

*Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017). The ALJ determined that all four statements were "of little probative value" because they largely addressed Plaintiff's condition after the relevant time period and failed to address Plaintiff's actual functioning. AR 862.

Plaintiff argues that his mother's statement addresses the relevant period because her statement starts by referring to the time "since he moved in with [her] on or about the 1st of October 2006." AR 250. But the statement then describes Plaintiff's medical history since he moved in with her and, after that, the statement uses the present tense to describe Plaintiff's limitations. For example, Plaintiff "is no longer able to sit or stand for periods of time" and due to foot numbness he "has a tendency to loose [sic] his balance." AR 250. Substantial evidence supports the ALJ's finding that Plaintiff's mother's statement does not reflect his limitations during the relevant time period. While Plaintiff's alternative interpretation may be rational, it cannot displace the ALJ's rational interpretation. *See Burch*, 400 F.3d at 680-81 (when the evidence is susceptible to more than one interpretation, the Commissioner's interpretation must be upheld if rational).

Plaintiff's father stated that "[a]bout 2-3 years ago [Plaintiff] has become more and more limited in a number of his abilities. If he sits to[o] long, he has trouble walking and dizzy [sic] for a while. His back pain has progressed where even going for a ride in my boat causes so much pain we have had to cut short any fishing outings over the last six months or so." AR 253. The reference to progressive pain and limitation, and specifically the last six months, is substantial evidence supporting the ALJ's finding that Plaintiff's father's statement refers primarily to the time after the relevant period. Again, while Plaintiff's alternative interpretation may be rational, the Court must uphold the ALJ's rational interpretation.

Similarly, the statements by Plaintiff's friends refer to progressive decline and give no

1  indication that they describe his condition in 2008 to 2010.  Mr. Collins only mentions decline

2  "over the y[ears]."  AR 256.  Mr. Hansen describes Plaintiff as in pain since at least 1996, when

3  Plaintiff was still performing medium and light work.  AR 262; *see* AR 63.  If Plaintiff was able

4  to work with those impairments, then they were not disabling for Social Security purposes.

5      The Court concludes the ALJ did not err by discounting these four lay witness

6  statements.

## D. Step Four

8      Plaintiff argues that if Dr. Hoskins' and Dr. Chilczuk's opinions are accepted, then his

9  RFC is sedentary and he cannot perform his past light work.  Dkt. 15 at 12-13.  However, as

10  discussed above, the ALJ permissibly discounted both of those medical opinions.  Accordingly,

11  the Court concludes the ALJ did not err by determining that Plaintiff could perform his past light

12  work as a plastic cutter or a mail clerk, and thus was not disabled.

## E. Step Five

14      Relying on vocational expert (VE) testimony, the ALJ found in the alternative that

15  Plaintiff could perform three sedentary jobs and three light jobs that existed in significant

16  numbers.  AR 865-66.  Plaintiff provided a declaration by vocational expert Joseph A. Moisan,

17  Ed.D., to the Appeals Council, which determined that the declaration would not change the

18  decision and thus declined to exhibit it.  *See* AR 562.  Plaintiff included the declaration as an

19  attachment to his opening brief.  Dkt. 15 at 18-45.  Dr. Moisan's declaration contradicts the VE

20  hearing testimony, stating that the DOT has not been updated since 1991 and the three sedentary

21  jobs that the ALJ relied on at step five no longer exist.  Dkt. 15 at 20.  The ALJ asked the VE at

22  the 2017 hearing about "antiquated" job descriptions and verified that the VE obtains "real

23  numbers" of existing jobs.  AR 708-09.  The Court need not settle this dispute between experts,

however, because Plaintiff does not dispute that the three light jobs are found in significant numbers in the national economy, totaling well over 100,000 positions. AR 865-66; *see Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 529 (9th Cir. 2014) (25,000 jobs nationwide is about the minimum number that meets the "significant number of jobs" standard). The light job numbers are adequate alone, regardless of the sedentary job numbers.

Plaintiff contends the ALJ erred by failing to properly address inconsistencies between the Dictionary of Occupational Titles (DOT) and the VE's testimony. Dkt. 15 at 13-14. Specifically, Plaintiff argues that his "RFC contained limitations that were nonexertional and the DOT does not address these types of limitations." Dkt. 15 at 14. The nonexertional limitations in the RFC were frequent balancing, handling, fingering, and feeling; no climbing; occasional stooping, kneeling, crouching, and crawling; and occasional exposure to vibration, hazards, and atmospherics. AR 853. The DOT does address these limitations. The light jobs the ALJ relied on, production assembler, electrical accessories assembler, and office helper, satisfied all of the limitations in the RFC. *See* DOT 706.687-010, 1991 WL 679074 (1991); DOT 729.687-010, 1991 WL 679733 (1991); DOT 239.567-010, 1991 WL 672232 (1991).

Plaintiff asserts that the ALJ's "failure to ask the VE about conflicts between his testimony and the DOT mandates reversal and remand." Dkt. 15 at 14. But the ALJ did address these matters. At the 2016 hearing, the ALJ stated at the beginning of the VE's testimony, "I will assume your testimony today is based on your knowledge, education, training and experience and is consistent with the DOT unless you tell me otherwise." AR 643. The VE responded, "That is correct." AR 643. At the close of the VE's testimony, when the ALJ asked, "Where do you base [your testimony] from if it's not exactly aligned with the DOT?" the VE responded, "Professional experience," and described his education and experience, as well as the

labor market research that his firm undertakes regularly. AR 878-79. In his decision, the ALJ "f[ound] that the testimony was based on the expert's professional experience, which is found to be a sufficient basis for any inconsistencies with the *DOT*, or any matters that are not expressly mentioned in the *DOT*." AR 866. The ALJ did not err by failing to address any conflicts between the VE's testimony and the DOT.

Plaintiff argues that "only an expert can identify whether testimony given by the VE at the hearing is consistent or not with the DOT…." Dkt. 14 at 8. But "a VE's testimony is one type of job information that is regarded as inherently reliable; thus, there is no need for an ALJ to assess its reliability." *Buck*, 869 F.3d at 1051. "A VE's recognized expertise provides the necessary foundation for his or her testimony. Thus, no additional foundation is required." *Bayliss*, 427 F.3d at 1218. Plaintiff's vague assertion that some other expert is needed to pronounce judgment on the VE's testimony has no grounding in law or logic. The Court concludes the ALJ did not err by relying on the VE's testimony in concluding that Plaintiff could perform jobs available in significant numbers, and thus was not disabled.

## CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

DATED this 14th day of February, 2019.

Marsha J. Pechman
United States District Judge

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 14